IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SONA TECHNOLOGIES, LLC, et al., :
: Civil Action 2:08-cv-468
        Plaintiffs, :
  v. :
: Magistrate Judge Abel
AL BARBER, et al., :
        Defendants, :

**OPINION AND ORDER**

      This matter is before the Court pursuant to the unopposed motion of Plaintiff Sona Technologies, LLC for summary judgment against Defendants NexGen Bio Energy, Ltd. ("NexGen"), and Al Barber ("Barber") (Doc. 119-1). For the reasons set forth herein, Plaintiff is entitled to judgment as a matter of law against NexGen.

      The Court has on prior occasions set forth the factual background of this dispute, which arises out of an attempt in 2008 by Plaintiffs Hasu and Kay Patel (the "Patels"), through their company, Plaintiff Sona Technologies, LLC ("Sona"), to invest in a biodiesel manufacturing operation which was to be operated by Defendant NexGen Bio Energy Ltd. *See, e.g.*, Doc. 116 at 3. Sona entered into a contract with NexGen to purchase a biodiesel production unit ("BPU"), which was to be manufactured by Defendant Orbitek, Inc. ("Orbitek"). In accordance with the terms of the contract, Sona wired an initial installment payment of $350,000.00 to

1

NexGen. However, Defendant Al Barber, president of NexGen, wired only $200,000.00 to Orbitek, and otherwise spent or transferred the remainder. The BPU was never built, and the biodiesel manufacturing operation was never established. Sona subsequently sued, *inter alia*, NexGen and Barber. It has now moved for summary judgment on its claim for breach of contract. Defendants NexGen and Barber have not filed a response.

### Summary judgment.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Where, as here, a party fails to respond to a motion for summary judgment, a Court's reliance on the facts offered by the movant is proper and sufficient. The facts presented and designated by the moving party become the facts at hand to be dealt with by the trial court; the Court is not obligated to search the record *sua sponte* for more. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

### Breach of contract claim.

The September 11, 2007 Sales and Installation Agreement and Sales

3

Confirmation between Sona and NexGen (Doc. 5 at 28-37) set forth the terms under which Sona would purchase a BPU from NexGen. Sona was to pay NexGen $1,350,000.00, with $350,000 due upon execution of the agreement. (*Id.* at 29.) NexGen was to operate the BPU "as part of a larger facility." (*Id.* at 30.) In a July 31, 2007 contract between Orbitek and NexGen, NexGen agreed to purchase BPUs from Orbitek for $1,025,000. (Doc. 103-5 at 12.) Orbitek sales invoices confirmed that $307,500 was due as a down payment upon each BPU. (Doc. 30-2.) It was apparently one of these ordered BPUs which NexGen was to resell to Sona; Hasu Patel was aware that Orbitek would manufacture the BPU. (Doc. 119-3 at 3.)

On September 19, 2007, Sona wired $350,000 to the account of NexGen. (Doc. 119-2 at 10.) However, the next day, instead of wiring the $350,000 on to Orbitek, Barber sent it only $200,000. (*Id.* at 13.) Barber later spent the remaining $115,000 himself. *See* Doc. 119-2 at 13-21. Orbitek, which did not receive its entire down payment, never manufactured a BPU for Sona. NexGen never delivered the ordered BPU to Sona, and its biodiesel production facility never opened. Sona never received back any portion of its $350,000. (Doc. 44 at 5.)

In its second amended complaint of November 14, 2008, Sona and the Patels brought suit, *inter alia*, against Barber and NexGen for fraud, negligent misrepresentation, deceptive trade practices, violations of the Ohio Business Opportunity Plans Act, and violations of Ohio securities law, against NexGen for breach of contract, and against Barber for conversion. (Doc. 36.) The motion at bar, although it is entitled "Plaintiff Sona's Motion for Summary Judgment Against

4

Defendants NexGen Bio Energy, Ltd. and Al Barber", addresses only Plaintiff Sona's claim against NexGen for breach of contract. Sona's complaint alleged no claim of breach of contract against Barber. See Doc. 36 at ¶¶43-47.

The second amended complaint purported to bring a claim for "piercing the corporate veil" against Barber, on grounds that he had "used NexGen as a vehicle to commit fraud". (*Id.* at ¶51.) However, as the Court has noted before, Ohio law does not recognize a cause of action for "piercing the corporate veil". (Doc. 43 at fn.3.) This term denotes a remedy whereby damages can be recovered against the principal of a company who has exercised control over it "in such a manner as to commit fraud or an illegal act". *Belvedere Condominium Unit Owners' Assn. v. R. E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289 (1993). The Ohio Supreme Court has held explicitly that piercing can only occur where a plaintiff demonstrates that a defendant shareholder has committed "fraud, an illegal act, or a similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 513 (2008). It found, in that case, that insurer bad faith, "a straightforward tort... does not represent the exceptional wrong that piercing is designed to remedy." *Id.*

Plaintiff repeatedly urges, in the instant motion, that "NexGen and Barber are both liable to Plaintiff for NexGen's breach of contract against Plaintiff Sona", "the Court should pierce the corporate veil in order to hold Defendant Barber personally liable for breaching NexGen's contract with Plaintiff Sona", "he should be held personally liable for this breach of contract", and that "NexGen breached its contractual obligations to Plaintiff Sona and Defendant Barber should be held

5

personally liable for such breach". Under *Dombroski*, the corporate veil cannot be pierced for a mere case of breach of contract, which is not even a tort.

The motion does argue also that Plaintiff should be permitted to pierce the corporate veil because Barber "used NexGen to undertake a fraud against Plaintiff Sona". However, Plaintiff has not moved for summary judgment with respect to its claim of fraud against NexGen and Barber. The motion does not set forth or allege the elements of fraud as it is defined in Ohio common law. Moreover, the elements of fraud include making a statement with knowledge of its falsity. *Walton v. Residential Fin. Corp.*, 905 N.E.2d 1307, 1309 (Ohio Com. Pl. 2009); *see also Burr v. Board of County Comm'rs. of Stark County*, 23 Ohio St.3d 69, syllabus at 2 (1986). Rather than affirmatively arguing here that Barber knew that the biodiesel facility would never open, Plaintiff alleges merely that "Barber *likely* knew this biodiesel venture with Plaintiff... was undercapitalized and unlikely to come to fruition." (Doc. 119-1 at 7, emphasis added.) Plaintiff has not in this motion proved, or even properly alleged, that Barber or NexGen committed fraud. It has simply addressed breach of contract and fraud as if they were the same thing. The Court will accordingly not manufacture a motion for summary judgment on fraud where none exists. It will instead examine, as Plaintiff has asked in the conclusion to its motion, whether or not "Plaintiff is entitled to a Judgment against NexGen for Breach of Contract as a matter of law." (*Id.* at 8.)

The elements of a claim of breach of contract in Ohio are "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss

6

to the plaintiff." *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483 (2000). There is no serious question here as to whether a contract existed, whether the plaintiff performed, and whether the plaintiff suffered damages; the answer of Defendants Barber and NexGen admitted these three elements. The remaining issue is simply whether NexGen breached the Sales and Installation Agreement and Sales Confirmation.

A duty of good faith and fair dealing is implied in the performance of any contract.[1] *State ex rel Cordray v. Estate of Roberts*, 2010-Ohio-2003 at ¶38 (Ohio App. 2010); *Stars of Cleveland, Inc. v. Fred Martin Dodge Suzuki, Inc.*, 2009-Ohio-4012 at ¶41 (Ohio App. 2009). This implied duty is established by public policy. *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 463 (2005). As stated by the Restatement (Second) of Contracts, "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.*, quoting Restatement of the Law 2d, Contracts (1981), Section 205, Comment a. Bad faith may consist of inaction, or may be the "abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance." *Id.*, quoting Comment d.

In the case at bar, no genuine issue of material fact remains as to whether

---

[1] The Court notes that, under Ohio law, a breach of the implied covenant of good faith and fair dealing is a type of breach of contract, not itself a cause of action. *See Gates v. Ohio Sav. Ass'n.*, 2009-Ohio-6230 at ¶54 (Ohio App. 2009), citing *Westwinds Dev. Corp. v. Outcalt*, 2009-Ohio-2948 at ¶89 (Ohio App. 2009); *see also Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 646 (1996).

7

NexGen breached its implied duty of good faith and fair dealing. As the deposition transcripts accompanying Plaintiff's motion demonstrate, Hasu Patel, on behalf of Sona, wired $350,000 to NexGen as its down payment on the BPU. (Doc. 119-3 at 2.) Patel discovered months later that only $200,000 of the money had reached Orbitek; when he found out he contacted Charles Wallace, Barber's contact at Huntington National Bank, to find out why. (*Id.* at 3-4.) Barber had given Wallace instructions to only wire $200,000. (*Id.* at 6.) NexGen's company bank records demonstrate that Barber spent the remainder of the money on, *e.g.*, travel, dining, and computing equipment. (*Id.* at 13-20.) Without the remainder of the down payment, Orbitek did not construct the BPU, and NexGen thus could not deliver it to Sona in fulfillment of the sales contract. NexGen's misapplication of the $350,000 thus frustrated the purpose of the contract, rendered it unperformable, and breached its implied duty of good faith towards Sona. Sona is therefore entitled to judgment as a matter of law on this claim.

### Conclusions.

For the reasons set forth above, Plaintiff Sona's Motion for Summary Judgment (Doc. 119-1) is **GRANTED** with respect to Sona's claim against Defendant NexGen Bio Energy Ltd. for breach of contract.

s/Mark R. Abel
United States Magistrate Judge

8